1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11   MARIO DONTA GAULDIN,            )   Civil No. 12cv791 LAB (RBB)
                                     )
12                Petitioner,        )   **REPORT AND RECOMMENDATION OF**
                                     )   **UNITED STATES MAGISTRATE JUDGE**
13   v.                              )   **DISMISSING CLAIMS TWO, FOUR,**
                                     )   **AND SPECIFIED SUBCLAIMS IN**
14   MATTHEW CATE, SECRETARY,        )   **CLAIM THREE [ECF NO. 20] AND**
                                     )   **DENYING PETITION FOR WRIT OF**
15                Respondent.        )   **HABEAS CORPUS [ECF NO. 1]**
     _____)

16

17        Petitioner Mario Donta Gauldin, a state prisoner proceeding

18   pro se and in forma pauperis, filed a Petition for Writ of Habeas

19   Corpus on March 29, 2012 [ECF No. 1], challenging a San Diego

20   Superior Court judgment entered after the trial court found him

21   guilty of being a felon in possession of a firearm and a jury found

22   him guilty of burglary, robbery, assault with a deadly weapon,

23   grand theft of a firearm, making a criminal threat and evading an

24   officer.  (Pet. 2,[1] ECF No. 1; Lodgment No. 1, Clerk's Tr. vol. 1,

25   299, Nov. 28, 2007 (abstract of judgment).)  Gauldin's Petition was

26   based on four claims:  (1) violation of the right to confront

27   _____

28        [1] Because Gauldin's Petition is not consecutively paginated,
     the Court will cite to it using the page numbers assigned by the
     electronic case filing system.

                                    1
                                                          12cv791-LAB(RBB)

witnesses guaranteed by the Sixth Amendment; (2) violation of the
Sixth Amendment right to a jury trial on the use of a prior
juvenile conviction in sentencing; (3) ineffective assistance of
counsel at trial; and (4) ineffective assistance of counsel on
appeal.  (See Pet. 4-10, ECF No. 1.)

Respondent Matthew Cate filed an Answer to the Petition for
Writ of Habeas Corpus asserting that claims one and four of
Gauldin's Petition are procedurally barred by the state court's
rejection of those claims on an independent and adequate state law
ground.  (Answer Pet. 2, ECF No. 10.)  Respondent alleges that
ground three is also procedurally barred except for the claim that
trial counsel was ineffective for failure to object to accomplice
identification in court.  (Id.)  Finally, Respondent contends that
state court's rejection of Petitioner's remaining claims did not
contradict or unreasonably apply established federal law, and did
not rely on unreasonable factual determinations of evidence.  (Id.)

On October 9, 2012, Gauldin filed a Traverse to his Petition
[ECF No. 18].  Gauldin subsequently filed an Application for Leave
to Amend Petitioner's Traverse [ECF No. 20], seeking to withdraw
ground two (violation of the Sixth Amendment right to a jury trial
on the use of prior juvenile conviction in sentencing) and ground
four (ineffective assistance of counsel on appeal), and also
withdrawing all but one subclaim in ground three (ineffective
assistance at trial).  (Pet'r's Appl. Leave Amend Pet'r's Traverse
3, 6-7, ECF No. 20.)  In his Amended Traverse, Gauldin addresses
his Confrontation Clause claim (ground one in his Petition) and the
claim that trial counsel was ineffective for failing to object to

the exhibition of two charged codefendants to the jury in jail attire and shackles (subclaim in ground three).  (Id. at 9, 21.)

In an analogous setting, a habeas petitioner sought to withdraw habeas claims that had not been exhausted in state court.  See Casner v. Valenzuela, Case No. 1:10-cv-01081-SKO-HC, 2013 U.S. Dist. LEXIS 156238, at *6 (E.D. Cal. Aug. 7, 2013).  The court treated the request to withdraw as a motion to dismiss, and the specified claims were dismissed without prejudice.  The petitioner proceeded on the remaining claims.  The same procedure is appropriate here.

The Court recommends that Gauldin's claims two, four, and three (except the subclaim in ground three that trial counsel was ineffective for failing to object to the appearance of two charged individuals in prison attire) be dismissed without prejudice.  The Court has reviewed the Petition, Respondent's Answer, the Amended Traverse, and the lodgments.  For the reasons discussed below, it is recommended that the Petition be **DENIED**.

## I.   FACTUAL BACKGROUND

The Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28 U.S.C.A. § 2254(e)(1) (West 2012); see also Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).  Petitioner has not objected to the state court's determination of facts and has incorporated them in his Amended Traverse.  (See Pet'r's Appl. Leave Amend Pet'r's Traverse 10, ECF No. 20.)  The following facts

1   are taken from the California Court of Appeal's opinion denying

2   Gauldin's consolidated direct appeal of his conviction and his

3   state habeas corpus petition:

4           a. People's Case

5               . . . .

6           On December 11, 2006, Jarrod Buchanan was cleaning
    his handgun when he heard someone at the front door of
7   his Rancho Penasquitos home.  He set the gun, which had a
    fake round in the chamber and no magazine, on the counter
8   to answer the door.  Gauldin and Kimberlee Snowden were
    at the door dressed in uniforms from The Cleaning
9   Authority, a company he had hired to clean his home.
    Buchanan invited them inside after they told him they
10  were there to conduct a customer satisfaction survey.

11          While Snowden interviewed Buchanan, Gauldin asked to
    use the bathroom.  Buchanan became suspicious when he saw
12  that the bathroom door was open and Snowden stumbled over
    her words as if she were stalling for time.  Buchanan
13  then saw Gauldin come towards him holding a red box
    cutter knife.  Gauldin waved the knife as he grabbed
14  Buchanan by the sleeve and pushed him into the bathroom.
    When Buchanan saw Gauldin temporarily block the knife
15  blade with his own body, Buchanan leapt at him and ran to
    grab his gun.  Gauldin yelled "gun" and jumped on
16  Buchanan, slashing Buchanan's hand several times with the
    knife.  After Gauldin bit him in the forearm, Buchanan
17  let go of the gun.

18          Gauldin pointed the gun at Buchanan and ordered him
    into the bathroom.  Gauldin repeatedly told Buchanan to
19  not look at him; he also pulled the slide back on the gun
    and looked into the chamber.  While Buchanan was in the
20  bathroom, Gauldin put on a pair of rubber gloves and
    started to wipe off the surfaces he had touched.

21
            Gauldin looked into the hallway and spoke to his
22  cohort, Eric Carter, a person who had previously cleaned
    Buchanan's house.  After Carter told Gauldin to have
23  Buchanan open the safe, Gauldin lead Buchanan to the
    safe, which was already open.  Gauldin then lead Buchanan
24  back to the bathroom and saw Buchanan's old safe on the
    ground.  Gauldin threatened to kill Buchanan if he did
25  not open the second safe, but Buchanan was unable to open
    it after multiple attempts.

26
            Gauldin returned Buchanan to the bathroom and closed
27  the door.  Ultimately, Buchanan armed himself with the
    shower curtain rod and opened the door, but his
28  assailants had already left.  Buchanan ran outside

                                4                    12cv791-LAB(RBB)

yelling for someone to call "911" and the police arrived about five minutes later.

Yvonne Warrick, who lived across the street from Buchanan, noticed a red car parked in front of her house on the day of the crime. She wrote down the license plate number because the doors were ajar and the driver, a Black woman, was putting the car back and forth into gear. She saw a tall Black man put something in the trunk of the car and then walk into Buchanan's home. She was not suspicious until she heard the red car leave and Buchanan yell that he had been robbed. Warrick later identified Snowden as the woman inside the car and Carter as the tall man who put items inside the trunk of the car; however, she never saw the third individual.

Police quickly located and pursued the car, which was registered to Snowden. After evading police, the car got trapped behind stopped traffic. Gauldin and Carter fled, but Snowden stayed inside the car. Police pursued Gauldin in their patrol cars and then on foot and captured him as he pulled a handgun from his pants pocket. Police recovered the gun, which had been stolen from Buchanan, and found a red box cutter knife and a pair of blue latex gloves when they searched Gauldin.

On the day of the incident, Buchanan viewed three photographic lineups containing photos of Gauldin, Carter and Snowden, but was unable to identify the three suspects. During the incident, Buchanan distinctly remembered that Gauldin wore his hair in braided corn rows. However, when the police photographed Gauldin later in the day, his hair was frizzy as if recently taken out of braids, but in the lineup photograph showed to Buchanan, Gauldin had his head shaved and a light mustache. Carter had a shaved head on the day of the crime, but the photograph used in the lineup depicted him with hair down to his collar. Snowden also looked younger in her lineup photograph than on the day of the crime. During trial, however, Buchanan had no doubt in his mind that Gauldin was the individual involved in the incident that had cut him with the box cutter.

DNA testing revealed Buchanan's blood on Gauldin's pants, the cutting edge of the box cutter knife and the outside of the gloves recovered from Gauldin's pocket. Gauldin's DNA was also found inside the gloves and he could not be excluded as a contributor to the DNA found on the handle of the box cutter. Carter and Snowden's DNA were not found on gloves or the box cutter.

b. Defense Case

At trial, Gauldin denied accompanying Carter and Snowden to Buchanan's house. He claimed that early that morning, he was with Carter and Snowden at a park and

told them that he wanted to buy a gun.  Carter knew
someone who could sell him a gun and the prospective
seller "Jayski" arrived at the park a short time later.
Jayski did not trust and refused to do business with
Gauldin and Carter then dropped Gauldin off at Gauldin's
girlfriend's home.

Several hours later, Carter returned to the park in a car
driven by Snowden and showed Gauldin a gun missing its
magazine.  Gauldin had the pair drive him home, but on
the way there police cars got behind them and attempted
to pull them over.  At some point, Gauldin told Snowden
to let him out of the car.  As he jumped out of the car,
Carter gave him the handgun and told him to throw it
away.  Gauldin claimed that he ran because he was on
parole and with a convicted felon who had a gun.

Gauldin denied having the box cutter knife or gloves in
his pocket, claimed he never touched the knife and that
he had never seen the knife or gloves before.  However,
he also claimed that the gloves were on the backseat when
he got to Snowden's car the second time and that he threw
them on the floor of the car.  Gauldin admitted that he
had taken the braids out of his hair after he was
arrested, but claimed he did not do so to frustrate
witness identification.

(Lodgment No. 11, <u>People v. Gauldin</u>, No. D052093, slip op. at 2-6

(Cal. Ct. App. Mar. 5, 2009).)

## II.  PROCEDURAL BACKGROUND

A second amended information filed in San Diego Superior Court

on September 17, 2007, charged Gauldin with first degree

residential burglary (count one), first degree residential robbery

(count two), assault with a deadly weapon (count three), grand

theft of a firearm (count four), making a criminal threat (count

five), recklessly evading an officer (count six), and possession of

a firearm as a felon (count eight).  (Lodgment No. 1, Clerk's Tr.

vol. 2, 84-89, Sept. 17, 2007 (second amended information).)  On

September 24, 2007, following a jury trial,[2] Petitioner Gauldin was

---

[2] Petitioner was represented by attorney Charles Guthrie
during the pretrial proceedings and at trial.  (<u>See</u> Lodgment No. 1,
Clerk's Tr. vol. 1, 240; Lodgment No. 2, Rep.'s Tr. vol. 1, 1.)

found guilty of first-degree residential burglary, first-degree
residential robbery, assault with a deadly weapon, grand theft of a
firearm, making a criminal threat, and recklessly evading an
officer.  (Lodgment No. 1, Clerk's Tr. vol. 1, 321-28, Sept. 24,
2007 (verdict forms).)  The trial court found Gauldin guilty of
being a felon in possession of a firearm.  (Id. at 299 (abstract of
judgment); id. at 316-17, Sept. 21, 2007 (minutes).)  Petitioner
also admitted two prior serious or violent felony convictions
within the meaning of California's Three Strikes Law and two prior
prison terms.  (Id. at 320, Sept. 24, 2007 (minutes).)  The trial
court dismissed one of Gauldin's convictions and sentenced him to
state prison for a term of twenty-seven years and eight months.
(Id. at 299 (abstract of judgment); id. at 329-30, Nov. 21, 2007
(minutes).)

Gauldin timely appealed.  (Lodgment No. 3, Appellant's Opening
Brief at 12, People v. Gauldin, No. D052093 (Cal. Ct. App. March 5,
2009).)[3]  Along with the appeal, Gauldin, through his appellate
counsel, filed a petition for writ of habeas corpus claiming
ineffective assistance of counsel for failure to object to his
accomplices appearing in front of the jury dressed in jail clothing
and shackles.  (Lodgment No. 4, Gauldin v. Cate, No. [D053283]
(Cal. Ct. App. filed June 25, 2008) (petition for writ of habeas
corpus).)  Subsequently, Petitioner's appellate attorney attempted
to submit a supplemental brief arguing that the trial court
violated Gauldin's constitutional right to confront witnesses by
admitting the contents of a DNA report without allowing him the

---

[3]  Attorney David L. Polsky represented Gauldin on appeal.

7                                           12cv791-LAB(RBB)

opportunity to cross-examine the criminalist who prepared it,[4] but the court of appeal rejected the filing. (Lodgment No. 9, People v. Gauldin, No. D052093 (Cal. Ct. App. Mar. 3, 2009) (order denying leave to file supplemental brief).)

Gauldin's appeal was consolidated with his habeas petition for disposition by the appellate court. (Lodgment No. 10, People v. Gauldin, No. D052093 (Cal. Ct. App. Mar. 5, 2009) (order consolidating appeal and petition for writ of habeas corpus).) On March 5, 2009, the court of appeal affirmed the judgment in Gauldin's criminal case and denied his petition for writ of habeas corpus. (Lodgment No. 11, People v. Gauldin, No. D052093, slip op. at 1 (Cal. Ct. App. Mar. 5, 2009).) The court of appeal denied on the merits Gauldin's claim challenging the use of his juvenile convictions as strikes. (Id. at 9-10.) Additionally, it rejected on the merits Petitioner's claim of ineffective assistance of trial counsel for failure to object to Gauldin's accomplices being identified in court while dressed in prison clothing. (Id. at 11-12.)

Gauldin, through appellate counsel, filed a petition for review with the California Supreme Court. (Lodgment No. 12, Petition for Review, People v. Gauldin, [No. S172140] (Cal. May 20, 2009).) Petitioner challenged the admission of testimony about the DNA report in the absence of the criminologist who prepared it, and Gauldin claimed his trial counsel provided ineffective assistance because he failed to object to Petitioner's accomplices appearing in court dressed in jail clothing and shackles. (Id. at 18-29.)

---

[4] This claim is now being raised in ground one of the current Petition. (See Pet. 4, ECF No. 1.)

1   The California Supreme Court denied review.  (Lodgment No. 13,

2   People v. Gauldin, No. S172140, order at 1 (Cal. May 20, 2009).)

3        Petitioner, proceeding pro se, then filed a habeas corpus

4   petition in the San Diego County Superior Court.  (Lodgment No. 14,

5   Gauldin v. Warden Adams, [No. HC 19711] (Cal. Super. Ct. filed

6   [Aug. 28, 2009]) (petition for writ of habeas corpus).)  Gauldin

7   challenged the admission of the DNA report at trial.  (Id. at 23-

8   27.)  On October 26, 2009, the superior court denied Gauldin's

9   petition on the merits.  (Lodgment No. 15, In re Gauldin, No. HC

10  19711, slip op. at 3 (Cal. Super. Ct. Oct. 26, 2009).)

11       It appears that in January 2010, Petitioner filed a petition

12  for review with the California Supreme Court.[5]  The California

13  Supreme Court denied the petition without prejudice to Gauldin's

14  ability to file a petition for writ of habeas corpus in the trial

15  court after the California Supreme Court decided People v. Dungo,

16  S176886; People v. Gutierrez, S176620; People v. Lopez, S177046;

17  and People v. Rutterschmidt, S176213.  (Lodgment No. 22, People v.

18  Gauldin, S179822, order at 1 (Cal. Mar. 10, 2010).)

19       Gauldin also filed a pro se habeas petition in the court of

20  appeal.  (Lodgment No. 16, Gauldin v. Harrington, Warden, No.

21  D056779 (Cal. Ct. App. filed Feb. 16, 2010) (petition for writ of

22  habeas corpus).)  Petitioner alleged eight claims, including

23  ineffectiveness of trial counsel and violation of Gauldin's right

24  to confront witnesses because the contents of a DNA report were

25  admitted into evidence in the absence of the criminalist who

26  _____

27       [5] The Court is unaware of Gauldin's claims there because that
    petition was not included in the lodgment filed with the Court.  See
28  http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist
    =0&doc_id=1932587&doc_no=S179822

9

1  prepared it.  (Id. at 3-19.)   The appellate court appointed

2  counsel for Petitioner and ordered supplemental briefing.

3  (Lodgment No. 17, In re Gauldin, No. D056779 (Cal. Ct. App. filed

4  Sept. 8, 2010) (supplemental petition for writ of habeas corpus).)

5  The court of appeal rejected all but one of the grounds in

6  Gauldin's habeas petition and modified the judgment so "that the

7  sentence on the count one enhancement alleging box cutter use is

8  stayed." (Lodgment No. 20, In re Gauldin, D056779, slip op. at 4,

9  6 (Cal. Ct. App. filed Feb. 22, 2011).)   The court denied the

10 petition in all other respects and rejected the other claims as

11 successive collateral attacks on the final judgment or as claims

12 that could have been but were not presented in Gauldin's previous

13 appeal and writ petition.  (Id. at 4.)

14      Gauldin, through his appointed counsel, filed a petition for

15 review and a petition to exhaust state remedies with the California

16 Supreme Court.  (Lodgment No. 21, Petition for Review at 2, In re

17 Gauldin, S190983 (Cal. Apr. 20, 2011).)   He sought review of the

18 unpublished decision denying in part writ of habeas corpus and

19 petitioned to exhaust state remedies.   The California Supreme Court

20 denied the petition on April 20, 2011.  (Lodgment No. 23, In re

21 Gauldin, S190983, order at 1 (Cal. Apr. 20, 2011).)

22      Gauldin filed his federal habeas petition on March 29, 2012

23 [ECF No. 1].   Currently remaining in the Petition are Gauldin's

24 Sixth Amendment Confrontation clause claim and ineffective

25 assistance of trial counsel for failure to object to codefendants

26 appearing in jail clothes and shackles in front of the jury.  (Pet.

27 4, 7-8, ECF No. 1.)

28 //

10

**III.   STANDARD OF REVIEW**

The Antiterrorism  and Effective Death Penalty Act ("AEDPA"),

28 U.S.C. § 2244, applies to all federal habeas petitions filed

after April 24, 1996.  Woodford v. Garceau, 538 U.S. 202, 204

(2003) (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)).  AEDPA

sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an application
> for a writ of habeas corpus in behalf of a person in
> custody pursuant to the judgment of a State court only on
> the ground that he is in custody in violation of the
> Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a); see also Reed v. Farley, 512 U.S. 339, 347

(1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir. 1991).

Because Gauldin's Petition was filed on March 29, 2012, AEDPA

applies to this case.  See Woodford, 538 U.S. at 204.

In 1996, Congress "worked substantial changes to the law of

habeas corpus." Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

1997).  Amended § 2254(d) now reads:

> An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a
> State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application of,
> clearly established Federal law, as determined
> by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

To present a cognizable federal habeas corpus claim, a state

prisoner must allege that his conviction was obtained "in violation

11

of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2254(a).  A petitioner must allege that the state court

violated his federal constitutional rights.  Hernandez, 930 F.2d at

719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990); Mannhalt

v. Reed, 847 F.2d 576, 579 (9th Cir. 1988).

A federal district court does "not sit as a 'super' state

supreme court" with general supervisory authority over the proper

application of state law.  Smith v. McCotter, 786 F.2d 697, 700

(5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780

(1990) (holding that federal habeas courts must respect a state

court's application of state law); Jackson, 921 F.2d at 885

(explaining that federal courts have no authority to review a

state's application of its law).  Federal courts may grant habeas

relief only to correct errors of federal constitutional magnitude.

Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989)

(stating that federal courts are not concerned with errors of state

law unless they rise to level of a constitutional violation).

The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003),

stated that "AEDPA does not require a federal habeas court to adopt

any one methodology in deciding the only question that matters

under § 2254(d)(1) -- whether a state court decision is contrary

to, or involved an unreasonable application of, clearly established

Federal law."  Id. at 71 (citation omitted).  In other words, a

federal court is not required to review the state court decision de

novo.  Id.  Rather, a federal court can proceed directly to the

reasonableness analysis under § 2254(d)(1).  Id.

The "novelty" in § 2254(d)(1) is "the reference to 'Federal

law, as determined by the Supreme Court of the United States.'"

1  Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd

2  on other grounds, 521 U.S. 320 (1997).  Section 2254(d)(1)

3  "explicitly identifies only the Supreme Court as the font of

4  'clearly established' rules." Id.  "[A] state court decision may

5  not be overturned on habeas corpus review, for example, because of

6  a conflict with Ninth Circuit-based law." Moore, 108 F.3d at 264.

7  "[A] writ may issue only when the state court decision is 'contrary

8  to, or involved an unreasonable application of,' an authoritative

9  decision of the Supreme Court." Id. (citing Childress v. Johnson,

10 103 F.3d 1221, 1225 (5th Cir. 1997); Devin v. DeTella, 101 F.3d

11 1206, 1208 (7th Cir. 1996); Baylor v. Estelle, 94 F.3d 1321, 1325

12 (9th Cir. 1996)).

13      Furthermore, with respect to the factual findings of the trial

14 court, AEDPA provides:

15          In a proceeding instituted by an application for a
        writ of habeas corpus by a person in custody pursuant to
16      the judgment of a State court, a determination of a
        factual issue made by a State court shall be presumed to
17      be correct. The applicant shall have the burden of
        rebutting the presumption of correctness by clear and
18      convincing evidence.

19 28 U.S.C. § 2254(e)(1).

20                          **IV.   DISCUSSION**

21 **A.   Admission of Testimony Regarding the DNA Tests**

22      In his first claim for relief, Gauldin alleges that the trial

23 court violated his right to confront witnesses guaranteed by the

24 Sixth Amendment because it admitted into evidence the contents of a

25 DNA report in the absence of testimony from the criminalist who

26 prepared it. (See Pet. 4, ECF No. 1.)  Petitioner argues that the

27 results of the DNA report were testimonial and could not be

28

admitted without giving him the opportunity to cross-examine the
report's author pursuant to <u>Melendez-Diaz v. Massachusetts</u>, 557
U.S. 305 (2009).  (<u>Id.</u> at 15.)  Respondent contends that Gauldin's
first claim is procedurally barred because it was forfeited in
state court.  (Resp't's Answer Attach. #1 Mem. P. & A. 14,[6] ECF No.
10.)  In the alternative, Respondent argues that Gauldin's
Confrontation Clause claim fails on the merits.  (<u>Id.</u> at 18-19.)

    1.   <u>Procedural default</u>

State courts may decline to review a claim based on a
procedural default.  <u>Wainwright v. Sykes</u>, 433 U.S. 72, 83-87
(1977).  "Just as in those cases in which a state prisoner fails to
exhaust state remedies, a habeas petitioner who has failed to meet
the State's procedural requirements for presenting his federal
claims has deprived the state courts of an opportunity to address
those claims in the first instance."  <u>Coleman v. Thompson</u>, 501 U.S.
722, 731-32 (1991).  A petitioner who has defaulted his federal
claims in state court by not complying with procedural rules
technically meets the requirements for exhaustion because state
remedies are no longer available.  <u>Id.</u> at 732 (citing 28 U.S.C.
§ 2254(b); <u>Engle v. Issac</u>, 456 U.S. 107, 125-26, n.28 (1982)).  But
federal habeas petitioners cannot "avoid the exhaustion requirement
by defaulting their federal claims in state court[,]" provided the
procedural default is based on an independent and adequate state
ground.  <u>Coleman</u>, 501 U.S. at 732.

//

_____

    [6] Because Respondent's Answer is not consecutively paginated,
the Court will cite to to it using the page numbers assigned by the
electronic case filing system.

1    A state-court procedural default may be excused only if a

2  habeas petitioner can demonstrate both "cause" for the default and

3  resulting "prejudice" under Coleman v. Thompson.

> "[C]ause" under the cause and prejudice test must be
> something external to the petitioner, something that
> cannot fairly be attributed to him: [W]e think that the
> existence of cause for a procedural default must
> ordinarily turn on whether the prisoner can show that
> some objective factor external to the defense impeded
> counsel's efforts to comply with the State's procedural
> rule.

Coleman, 501 U.S. at 753 (alteration in original) (internal

quotation marks omitted).  To demonstrate prejudice under Coleman,

the "habeas petitioner must show 'not merely that the errors at . .

. trial created a possibility of prejudice, but that they worked to

his actual and substantial disadvantage, infecting his entire trial

with error of constitutional dimensions.'"  Murray v. Carrier, 477

U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 152,

170 (1982)) (omission and emphasis in original).

16    "A federal habeas court will not review a claim rejected by a

state court 'if the decision of [the state] court rests on a state

law ground that is independent of the federal question and adequate

to support the judgment.'"  Beard v. Kindler, 558 U.S. 53, 55

(2009) (alteration in original) (quoting Coleman, 501 U.S. at 729).

"In order to constitute adequate and independent grounds sufficient

to support a finding of procedural default, a state rule must be

clear, consistently applied, and well-established at the time of

the petitioner's purported default."  Wells v. Maass, 28 F.3d 1005,

1010 (9th Cir. 1994) (citations omitted).

27    Even if a basis for a state procedural bar exists, it "does

not prevent a federal court from resolving a federal claim unless

15

the state court actually relied on the state procedural bar 'as an independent basis for its disposition of the case.'" Evans v. Chavis, 546 U.S. 189, 206 (2006) (quoting Harris v. Reed, 489 U.S. 255, 261-62 (1989)). "[A] procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. at 263 (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)). At the same time, "a state court need not fear reaching the merits of a federal claim in an alternative holding." Id. at 264 n.10. Thus, as long as the state court explicitly invokes a state procedural bar as a separate basis for its decision, the federal court in a habeas case is required to "honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." Id. (citing Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935)).

The respondent has the initial burden of pleading an adequate and independent procedural bar as an affirmative defense in a habeas case. See Insyxiengmay v. Morgan, 403 F.3d 657, 665-66 (9th Cir. 2005); Bennett v. Mueller, 322 F.3d 573, 585 (9th Cir. 2003). The burden then shifts to the petitioner to place that defense in issue. See Bennett, 322 F.3d at 586. The petitioner may accomplish this with factual allegations and case authority that demonstrate inconsistent applications of the procedural rule. Id. At this point, the burden shifts back to the respondent to prove the bar is applicable. Id. "[I]t is the law of this circuit that

the ultimate burden is on the State, not the petitioner, to show that a procedural state bar was clear, consistently applied, and well-established at the time the party contesting its use failed to comply with the rule in question." Insyxiengmay, 403 F.3d at 666. Even if the state rule is independent and adequate, a petitioner can overcome the procedural bar by showing (1) cause for the default and actual prejudice as a result of alleged violations of federal law or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749-50.

To determine whether a claim is procedurally barred, the Court reviews the last reasoned state court opinion. Vansickel v. White, 166 F.3d 953, 957 (9th Cir. 1999). The Court presumes that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Respondent argues that the last reasoned state court ruling on Gauldin's first claim was by the court of appeal on February 22, 2011. (Resp't's Answer Attach. #1 Mem. P. & A. 15, ECF No. 10.) That order stated:

> Based on In re Clark, supra, 5 Cal. 4th at pp. 765-769, we reject all but one of Gauldin's contentions because they are successive collateral attacks on the final judgment, or could have been but were not presented in his previous appeal and writ petition. However, we agree he received ineffective assistance from his trial and appellate attorneys, who did not contest the imposition of the two enhancements on the robbery conviction for the gun use under section 12022.53, subd. (b), and box cutter use under section 12022, subd. (b)(1).

1  (Lodgment No. 20, <u>In re Gauldin</u>, D056779, slip op. at 4.)

2  Respondent claims that the appellate court rejected Petitioner's

3  Confrontation Clause claim "on the independent state law procedural

4  ground that [it] could have been, but was not, presented in the

5  previous consolidated appeal and habeas corpus petition . . . ."

6  (Resp't's Answer Attach. #1 Mem. P. & A. 15, ECF No. 10.)

7       Petitioner's supplemental brief raising this claim before the

8  appellate court was returned unfiled in March 2009.  (Lodgment No.

9  9, <u>People v. Gauldin</u>, No. D052093 (order denying leave to file

10 supplemental brief).)  Gauldin's claim was later denied on the

11 merits by the San Diego Superior Court in October of 2009.

12 (Lodgment No. 15, <u>In re Gauldin</u>, No. HC 19711, slip op. at 3.)  On

13 March 22, 2010, the California Supreme Court denied this claim

14 without prejudice.  (Lodgment No. 22, <u>People v. Gauldin</u>, No.

15 S179822, order at 1.)  Gauldin returned to the California Court of

16 Appeal; that court denied his Confrontation Clause claim, along

17 with several others, as successive collateral attacks on the final

18 judgment, or because they could have been but were not presented in

19 Gauldin's previous appeal and writ petition.  (Lodgment No. 20, <u>In</u>

20 <u>re Gauldin</u>, D056779, slip op. at 4.)

21      Respondent contends that the court of appeal's denial was on

22 procedural grounds.  The opinion, however, did not clarify the

23 specific reason barring Gauldin's Confrontation Clause claim.  This

24 type of ambiguity has occurred in other cases.  For example, in

25 <u>Valerio v. Crawford</u>, 306 F.3d 742, 774 (9th Cir. 2002), the Nevada

26 Supreme Court did not specify "which claims had previously been

27 presented to the state court and could not be relitigated, and

28

18                                      12cv791-LAB(RBB)

which had never been presented to state court and had been waived."
The Ninth Circuit found that the district court erred in applying a
procedural bar based on a ruling by the Nevada Supreme Court that
"fail[ed] to specify which claims were barred for which reasons."
Id. at 774-75.  Because the state court decision was ambiguous,
"the Nevada Supreme Court 'did not clearly and expressly rely on an
independent and adequate state ground.'"  Id. (citing Coleman v.
Thompson, 501 U.S. at 735).  As in Valerio, it is impossible to
tell from the California Court of Appeal's opinion whether it
rejected the Confrontation Clause claim as a successive collateral
attack or as a claim that could have been but was not presented in
Gauldin's previous appeal and habeas petition.

     If the state court order is ambiguous, the federal court may
proceed to the merits of the claims.  Koerner v. Grigas, 328 F.3d
1039, 1051 (9th Cir. 2003).  Because the California Court of Appeal
did not clearly state that Gauldin's confrontation claim was barred
as procedurally defaulted, its ruling did not constitute
independent and adequate state grounds with respect to this claim.
Respondent has not met his burden of showing that the state court
decision "clearly and expressly" rested on a state procedural bar.
Harris v. Reed, 489 U.S. at 263.

            2.  Gauldin's Confrontation Clause claim

     Respondent argues, in the alternative, that if Gauldin's
Confrontation Clause claim is not procedurally defaulted, it still
fails.  (Resp't's Answer Attach. #1 Mem. P. & A. 18-19, ECF No.
10.)  Respondent contends that to the extent the California Supreme
Court's order in People v. Gauldin, Case No. S179822 [Lodgment No.

22], can be construed as a merits denial of Petitioner's claim, the decision did not contradict or unreasonably apply established federal law. (<u>Id.</u> at 18.)  Gauldin argues that pursuant to <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009), the contents of Cornacchia's report were testimonial in nature, and thus Petitioner was entitled to cross-examine Cornacchia before his DNA test results could be admitted at trial. (Pet'r's Appl. Leave Amend Pet'r's Traverse 16-18, ECF No. 20.)  Respondent points out that the DNA report was not admitted at trial, but instead was merely described by the testifying criminologist to explain how the expert reached his opinion. (Resp't's Answer Attach. #1 Mem. P. & A. 18, ECF No. 10.)  Thus, Respondent argues that the facts in this case are distinguishable from <u>Melendez-Diaz</u>, where the hearsay report was offered into evidence. (<u>Id.</u> at 19.)

In this case, David Cornacchia, a DNA analyst with the San Diego Police Department, examined the evidence and prepared a report, but was not available to testify at trial. (Lodgment No. 2, Rep.'s Tr. vol. 2, 346, 348-49, 352, Sept. 20, 2007.)  Patrick O'Donnell, a supervising criminalist with the DNA laboratory of the San Diego Police Department, testified at Petitioner's trial using the report generated by Cornacchia. (<u>Id.</u> at 344-45.)

> Q.  Was it important or why does a criminalist like Mr. Cornacchia take pictures as he's doing work?
>
> A.  It's our philosophy in the laboratory to create a written and pictorial record such that if an individual is not available to testi[fy] or goes on to be employed by another agency that we can re-create the entire testing process and evidence, evaluation process, in a particular case.
>
> Q.  If someone if not available, you are able or another person that's a reviewer is able to step in, review the

1       work and see it and testify in court?

2       A.   Correct.

3       Q.   Mr. Cornacchia is not available, to your knowledge,
        this week; is that right?

4       A.   Yes.

5

6   (Id. at 352.)

7       O'Donnell's job responsibilities as a supervising criminalist

8   included "perform[ing] what's termed an administrative review of

9   every case that's issued by the DNA laboratory." (Id. at 348.)

10  O'Donnell testified that analyst Cornacchia concluded that DNA

11  testing revealed the victim's blood on Gauldin's pants, the cutting

12  edge of the box-cutter knife, and the exterior of the gloves

13  recovered from Petitioner. (Id. at 361-62.) Petitioner was the

14  "predominant contributor" of DNA found inside the rubber gloves.

15  (Id. at 364.) "Gauldin could not be excluded as a contributor to

16  the DNA on that knife . . . ." (Id. at 365.) Defense counsel was

17  able to cross-examine O'Donnell regarding his testimony about DNA

18  evidence in the case. (Id. at 366-87, 389-90.) Cornacchia's

19  report was not admitted into evidence in the criminal case.

20      The Court "must first decide what constitutes 'clearly

21  established Federal law, as determined by the Supreme Court of the

22  United States,' for purposes of [Gauldin's] Confrontation Clause

23  claim." Meras v. Sisto, 676 F.3d 1184, 1187 (9th Cir. 2012)

24  (quoting Lockyear v. Andrade, 538 U.S. 63, 71 (2003)). At the time

25  of Gauldin's trial in 2007, the established federal law governing

26  the Confrontation Clause prohibited the admission of "testimonial

27  statements of a witness who did not appear at trial unless he was

28

                                21                    12cv791-LAB(RBB)

unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004). The Supreme Court in Crawford noted that "[v]arious formulations of this core class of 'testimonial' statements exist . . . ." Id. at 52. The California Supreme Court, applying Crawford, subsequently held that a report of DNA test results was not testimonial, and testimony about the report by an expert who did not perform the test was admissible at trial without violating Confrontation Clause. People v. Geier, 41 Cal. 4th 555, 605-06, 161 P.3d 104, 138-39, 61 Cal. Rptr. 3d 580, 620-21 (2007).

In 2009, the United States Supreme Court in Melendez-Diaz clarified the Crawford definition of "testimonial" evidence. Melendez-Diaz v. Massachusetts, 557 U.S. at 310-11. The Court considered whether the state may introduce certificates of a forensic laboratory showing the results of its analysis without the testimony of the analyst who performed the analysis. Id. at 308-09. The certificates in Melendez-Diaz indicated the weight of the seized plastic bags and stated that the bags "'[h]a[ve] been examined with the following results: The substance was found to contain: Cocaine.'" Id. at 308. The certificates were sworn to before a notary. Id. The Court found that "certificates of analysis" were, in effect, testimonial statements by the state laboratory analysts as to the nature of a substance. Id. at 310-11. The Supreme Court held that the admission of certificates reporting the results of forensic analysis in a defendant's drug trial, which showed that material seized by police and connected to

the defendant was cocaine, violated the defendant's Sixth Amendment right to confront the witnesses against him. Id. at 329.

In a later decision, Bullcoming v. New Mexico, 564 U.S. __, __, 131 S. Ct. 2705, 2710 (2011), the Supreme Court considered the admission of a forensic laboratory report signed by an analyst who certified that the defendant's blood-alcohol concentration was ".21 grams per hundred milliliters," above the threshold necessary to convict the defendant on a charge of aggravated driving while intoxicated. Id. at 2709-10. In the same document, the analyst also certified that he received the sealed blood sample intact and followed certain laboratory procedures. Id. at 2710. Because the analyst was unavailable at trial, the prosecution called another expert who had not observed nor reviewed the analyst's work but was familiar with the laboratory's testing procedures. Id. at 2711-12. The report certifying blood-alcohol level was admitted as a business record. Id. at 2712.

The question before the Court in Bullcoming was "whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification-- made for the purpose of proving a particular fact--through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." Id. at 2710. A majority of the Court agreed that the analyst's signed certificate was testimonial and "may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." Id. at 2713. Accordingly,

the Confrontation Clause did not permit the admission of laboratory reports through the testimony of an analyst who did not sign the report or "perform or observe the test reported in the certification." Id. at 2710, 2713.

The holding in Bullcoming was limited to circumstances where the lab report signed by one criminologist is admitted through the testimony of a different expert who had no involvement in the testing or preparing of the report.  See Bullcoming, 564 U.S. at __, __, 131 S. Ct. at 2719, 2722 (Sotomayor, J., concurring) (explaining that the holding had a "limited reach," and was "not a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence," and "not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue.").

For Gauldin, the issue is whether O'Donnell's testimony to the contents of Cornacchia's report violated the Confrontation Clause at the time the state court denied Petitioner's claim.  For purposes of review under 28 U.S.C. § 2254(d)(1), the Supreme Court has identified clearly established federal law as "this Court's precedents as of the time the state court renders its decision." Greene v. Fisher, 565 U.S. __, __, 132 S. Ct. 38, 44 (2011) (quoting Cullen v. Pinholster, 563 U.S. __, __, 131 S. Ct. 1388, 1399 (2011)) (internal quotation marks omitted).  Respondent argues that the relevant state court decision was that of the California Supreme Court on March 15, 2010.  (Resp't's Answer Attach. #1 Mem.

P. & A. 18-19, ECF No. 10.)  The California Supreme Court denied Gauldin's petition for review without prejudice to his ability to file a petition for writ of habeas corpus in the trial court after the California Supreme Court decided People v. Dungo, S176886; People v. Gutierrez, S176620; People v. Lopez, S177046; and People v. Rutterschmidt, S176213.[7]  (Lodgment No. 22, People v. Gauldin, S179822, order at 1.)  After that order, Gauldin raised his Confrontation Clause claim with the California Supreme Court.  (See Lodgment No. 21, Petition for Review at 2, In re Gauldin, S190983.) The state court summarily denied the petition.  (Lodgment No. 23, In re Gauldin, S190983, order at 1.)

Where the California Supreme Court denies a petitioner's claims without comment, the "silent" denial is considered "on the merits" and rests on the last reasoned decision on the claims.  See Ylst v. Nunnemaker, 501 U.S. at 803-06; Gill v. Ayers, 342 F.3d 911, 917 n.5 (9th Cir. 2003); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992).  According to the record before this Court, the last decision on the merits of Gauldin's Confrontation Clause claim was issued by the San Diego Superior Court in October of 2009.  (Lodgment No. 15, In re Gauldin, No. HC 19711, slip op. at

---

[7] The line of cases cited in the California Supreme Court's order addressed the effect the United States Supreme Court decision in Melendez-Diaz v. Massachusetts, 557 U.S. 305, on People v. Geier, 41 Cal. 4th 555, 161 P.3d 104, 61 Cal. Rptr. 3d 580 (2007), and dealt with the Confrontation Clause claims in the context of forensic reports.  People v. Gutierrez, 300 P.3d 896, 156 Cal. Rptr. 3d 743 (2013); People v. Dungo, 55 Cal. 4th 608, 286 P.3d 442, 147 Cal. Rptr. 3d 527 (2012); People v. Lopez, 55 Cal. 4th 569, 286 P.3d 469, 147 Cal. Rptr. 3d 559 (2012); and People v. Rutterschmidt, 55 Cal. 4th 650, 286 P.3d 435, 147 Cal. Rptr. 3d 518 (2012).

3.)  Denying the claim, the court stated that Gauldin failed to submit "any evidence to support his claim that DNA testimony was admitted through the use of affidavit testimony and that he was denied the right to properly cross exam[ine] on this issue."  (<u>Id.</u>)

At the time of the superior court's decision on October 26, 2009, the United States Supreme Court had already decided <u>Melendez-Diaz</u>, which prohibited admission into evidence of sworn affidavits of unavailable witnesses.[8]  557 U.S. at 308-09.  <u>Melendez-Diaz</u> involved the introduction of affidavits detailing the results of forensic laboratory analysis, without testimony in support of the affidavits.  In Petitioner's case, the DNA report was not admitted into evidence.  Instead, its contents were discussed by the testifying witness, O'Donnell.  O'Donnell was the lab director who had direct supervision of Cornacchia, the analyst who prepared the report, as well as all his work.  (Lodgment No. 2, Rep.'s Tr. vol. 2, 366.)  O'Donnell testified that he had a duty, as a supervising criminalist, to conduct an administrative review of every case for which a report is issued by the DNA lab.  (<u>Id.</u> at 348.)  Even under the later-decided <u>Bullcoming</u> standard, such supervisory testimony may be permissible.[9]  <u>Bullcoming</u>, 564 U.S. at __, 131 S. Ct. at 2722 (Sotomayor, J., concurring in part) (noting that <u>Bullcoming</u> was "not a case in which the person testifying is a supervisor,

---

[8] <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305, was decided on June 25, 2009.

[9] <u>Bullcoming v. New Mexico</u>, 564 U.S. __, 131 S. Ct. 2705, was not decided until June 23, 2011, after the last denial of Gauldin's petition by the California Supreme Court on April 20, 2011.  (<u>See</u> Lodgment No. 23, <u>In re Gauldin</u>, S190983, order at 1.)

1    reviewer, or someone else with a personal, albeit limited,

2    connection to the scientific test at issue.").

3        In this case, the state court reasonably believed that

4    O'Donnell's testimony satisfied the Confrontation Clause because

5    O'Donnell was the "supervising criminalist" and director of the

6    laboratory where the other analysts worked, and he testified that

7    Cornacchia followed the protocols and properly performed the DNA

8    analysis in this case:

9        Q. [Cornacchia's] report and all the documentation was
         done in the normal course of his duties at the lab?
10
11       A.  Yes.

12       Q.  He was under a duty to make these notes and generate these
         results at or about the time of his work on the case?
13
         A.  Yes.
14
         Q.  You are one of the custodians of these reports in that you
15       are the lab director and have direct supervision of both Mr.
         Cornacchia and his work?
16
         A.  Yes.
17
         Q.  And it appears from your review of all this information
18       that there was proper protocols followed and the report was
         properly generated as a result of his analysis?
19
         A.  Yes.
20
(Lodgment No. 2, Rep.'s Tr. vol. 2, 366.)

21       Unlike Melendez-Diaz and Bullcoming, the prosecutor in

22   Gauldin's trial did not introduce the laboratory report into

23   evidence; the only evidence of the DNA testing was the testimony of

24   O'Donnell, who Petitioner was able to cross-examine.  Melendez-Diaz

25   dealt with the use of affidavits instead of testimony, while

26   Gauldin's case involved in-court testimony of a DNA expert, a

27   supervisor who did not reach an independent conclusion about the

28

                                  27                    12cv791-LAB(RBB)

DNA tests.  To the extent <u>Melendez-Diaz</u> clearly established the
rule prohibiting the admission of sworn affidavits regarding
scientific evidence without testimony, it did not expressly
preclude a supervising expert's testimony about test results
prepared by someone other than the testifying expert.

     The Ninth Circuit and several lower courts faced with similar
habeas claims have agreed that <u>Melendez-Diaz</u> did not clearly
establish that testimony by a supervisor about the results of a
scientific test violated the Confrontation Clause.  In <u>Meras</u>, the
court observed that "<u>Melendez-Diaz</u> involved a lab report submitted
without live testimony, whereas Meras's case has the added
complication that the report was introduced through the testimony
of the author's supervisor.  676 F.3d at 1190.  The state court
decision denying Meras's petition for review in 2005 did not
violate clearly established supreme court law because "[t]he Court
did not decide until 2011, in <u>Bullcoming</u>, that the right to
confrontation could be satisfied only by live testimony of a
declarant."  <u>Id.</u>; <u>accord</u> <u>Graham v. Cash</u>, No. CV 11-5723-DDP (OP),
2013 WL 3982271, at *15-17 (C.D. Cal. July 30, 2013) (noting that
supervisor testified and gave her opinion based on DNA tests
performed by another); <u>Talamantes v. Allison</u>, No. CV 11-1394-DSF
(DTB), 2012 WL 3206052, at *7 (C.D. Cal. May 24, 2012) ("[T]he
specific claim raised in [<u>Meras</u>]--a Confrontation Clause claim
based upon a lab report introduced through the testimony of
author's colleague--was not decided by the Supreme Court until 2011
in its decision in <u>Bullcoming</u>.") (citing <u>Meras v. Sisto</u>, 676 F.3d
at 1190); <u>Wise v. Neotti</u>, No. CV 11-6303-MMM (AJW), 2012 U.S. Dist.

LEXIS 160684, at *15 (C.D. Cal. Apr. 27, 2012) ("[F]airminded jurists could disagree about whether Melendez-Diaz precluded the live testimony of a laboratory supervisor who reviewed and signed a report prepared by another analyst.  Accordingly, petitioner is not entitled to relief.").

The California court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  Thus, the state court's opinion is not a basis for habeas relief.  See Harrington, 562 U.S. at ___, 131 S. Ct. at 786. For all these reasons, Gauldin's Confrontation Clause claim should be DENIED.

**B.   Ineffective Assistance of Trial Counsel**

For ineffective assistance of counsel to provide a basis for federal habeas relief, Petitioner must satisfy the two-part test from Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, Gauldin must show that his counsel's performance was deficient. Id.  Second, he must establish that counsel's deficient performance prejudiced the defense.  Id.  To satisfy the prejudice prong, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error.  Williams v. Taylor, 529 U.S. 362, 406 (2000); Strickland, 466 U.S. at 694.  A reasonable probability in this context is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Therefore, Gauldin must establish both deficient performance and prejudice in order to establish ineffective assistance of counsel.  Id. at 687.  A court need not,

however, determine whether counsel's performance was deficient
before addressing the prejudice prong; it is often easier to
dispose of an ineffectiveness claim on the ground of lack of
sufficient prejudice.  Id. at 697.

The United States Supreme Court noted that "[s]urmounting
Strickland's high bar is never an easy task." Padilla v. Kentucky,
559 U.S. 356, 371 (2010).  In the context of federal habeas review,
"[t]he standards created by Strickland and section 2254(d) are both
'highly deferential.'" Harrington v. Richter, 562 U.S. at __, 131
S. Ct. at 788.  Trial counsel is presumed to be competent.
Strickland, 466 U.S. at 689.  "To rebut this presumption,
[Petitioner] must demonstrate that his counsel's performance was
unreasonable under prevailing professional norms and was not the
product of sound strategy." Sechrest v. Ignacio, 549 F.3d 789, 815
(9th Cir. 2008).  Counsel's representation is deficient if "it
falls outside the range of competence demanded of attorneys in
criminal cases." Id.

As noted above, Gauldin initially raised, as ground three in
his Petition, several subclaims regarding his trial counsel's
ineffectiveness. (See Pet. 8-9, ECF No. 1.)  Respondent argued
that all but one of the subclaims were procedurally barred because
they could have been, but were not, presented in the previous
consolidated appeal and habeas petition. (Resp't's Answer Attach.
#1 Mem. P. & A. 15, ECF No. 10.)  Respondent's Answer did not
address whether under the exception to the procedural bar doctrine
articulated by the Supreme Court on March 20, 2012, in Martinez v.
Ryan, __ U.S. __, __, 132 S. Ct. 1309, 1315 (2012), attorney error

1    in initial-review collateral proceedings would qualify as cause for

2    excusing procedural default in this case.

3        This Court need not consider whether the equitable exception

4    to procedural bar applied because Gauldin has abandoned all but one

5    of the subclaims regarding his trial counsel's ineffectiveness.

6    (Pet'r's Appl. Leave Amend Pet'r's Traverse 6-7, ECF No. 20.)

7    Petitioner currently contends that his trial attorney provided

8    ineffective assistance by failing to object to Gauldin's

9    codefendants being identified in court while dressed in prison

10   clothing.  (See Pet. 7, ECF No. 1; Pet'r's Appl. Leave Amend

11   Pet'r's Traverse 21, ECF No. 20.)  Respondent argues that this

12   claim fails because Gauldin cannot establish that no fair-minded

13   jurist would agree with the state court's opinion rejecting

14   Petitioner's claim.  (Resp't's Answer Attach. #1 Mem. P. & A. 17,

15   ECF No. 10.)

16       When reviewing a state court decision, federal courts must

17   look to the last reasoned state court decision as the basis of the

18   judgment.  Polk v. Sandoval, 503 F.3d 903, 909 (9th Cir. 2007)

19   (citing Benson v. Terhune, 304 F.3d 874, 880 n.5 (9th Cir. 2002)).

20   The last state court to address the merits of Petitioner's

21   ineffective assistance of counsel claim was the California Court of

22   Appeal.  (See Lodgment No. 11, People v. Gauldin, No. D052093, slip

23   op. at 11-12.)  This Court reviews that decision.  Ylst v.

24   Nunnemaker, 501 U.S. at 806.

25       The court of appeal rejected Gauldin's ineffective assistance

26   claim for failure to object to in-court identification of

27   codefendants while they wore prison garb and shackles, concluding

28

that his lawyer was not deficient.  (Lodgment No. 11, <u>People v.</u>
<u>Gauldin</u>, No. D052093, slip op. at 11-12.)  The court explained:

> In connection with the habeas petition, Gauldin's
> trial counsel submitted a declaration stating that he had
> a tactical reason for not objecting, namely, that the
> defense at trial was that Carter, Snowden and a third
> person committed the crimes and that minimizing the
> prejudicial look of Carter and Snowden would have been
> contrary to that defense.  In light of a credible
> tactical reason for defense counsel's conduct, we cannot
> say his legal representation fell below an objective
> standard of reasonableness.

(<u>Id.</u> at 11.)  In addition, the appellate court noted that "even if

trial counsel's conduct could be viewed as deficient, Gauldin has

not demonstrated a reasonable probability the outcome of the trial

would have been different had his counsel objected because the

evidence against him was strong and his story lacked credibility."

(<u>Id.</u> at 11-12.)

Petitioner argues that "the appearance of Carter and Snowden

in jail clothes and shackles would lead the jury to believe that

Warrick and Buchanan accurately identified them, even if they had

not.  That belief would almost certainly carry over to Buchanan's

identification of petitioner."  (Pet'r's Appl. Leave Amend Pet'r's

Traverse 25, ECF No. 20.)  Gauldin contends that the in-court

identification procedure of his codefendants impaired the

presumption of innocence, because the "suggestion of petitioner's

guilt by association with Carter and Snowden was vivid."  (<u>Id.</u>)

"The right to a fair trial is a fundamental liberty secured by

the Fourteenth Amendment.  The presumption of innocence, although

not articulated in the Constitution, is a basic component of a fair

trial under our system of criminal justice."  <u>Estelle v. Williams</u>,

1   425 U.S. 501, 503 (1976).  In Estelle, the Supreme Court found that

2   due process was compromised by "the constant reminder of the

3   accused's condition implicit in such distinctive, identifiable

4   attire."  Id. at 504-05.  "[A]n accused should not be compelled to

5   go to trial in prison or jail clothing because of the possible

6   impairment of the presumption [of innocence] so basic to the

7   adversary system."  Id. at 504.

8       Here, it was Gauldin's codefendants, not the Petitioner, who

9   appeared in prison clothing before the jury.  Estelle does not

10  extend to codefendants wearing prison attire, and Gauldin does not

11  cite to any federal authority supporting his ineffective assistance

12  claim on this point.  United States v. Portillo-Quezada, Nos.

13  03-20051, 08-2295, 2010 WL 2952353, at *3 (D. Kan. July 26, 2010)

14  (denying motion to vacate under 28 U.S.C. § 2255 where petitioner's

15  codefendants appeared in prison clothing at trial).

16      Petitioner argues that he is entitled to relief based on the

17  analysis in the California appellate decision in People v.

18  Williams, 93 Cal. App. 3d 40, 67, 155 Cal. Rptr. 414, 429 (1979).

19  (See Pet. 28-29, ECF No. 1.)  The state court, id., relied on

20  Estelle v. Williams, 425 U.S. 501, and concluded that Williams's

21  constitutional right to a fair trial was violated by exhibiting his

22  former codefendants to the jury while wearing their jail clothing.

23      This Court may grant habeas relief only to correct errors of

24  federal constitutional magnitude.  Oxborrow v. Eikenberry, 877 F.2d

25  1395, 1400 (9th Cir. 1989) (stating that federal courts are not

26  concerned with errors of state law unless they rise to level of a

27  constitutional violation).  Here, trial counsel's failure to object

28

to the in-court identification of the codefendants did not violate Gauldin's constitutional rights because its effect on the jury did not compromise the defense theory chosen by Petitioner at trial. See Estelle, 425 U.S. at 504 ("The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. . . . . Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience.")

Gauldin's defense theory at trial was that Eric Carter and Kimberlee Snowden perpetrated the crime with another individual named Jayski. (Lodgment No. 2, Rep.'s Tr. vol. 3, 464, 479-80, 518-20.) Gauldin's trial counsel argued in his closing argument that Snowden and Carter committed the crime. (Id. at 598, 601, 608.) Petitioner's testimony implicated Snowden and Carter. Gauldin stated that Snowden sped up when police tried to pull her over. (Id. at 444-46.) He also claimed that Carter handed him Buchanan's gun and said to throw it in the bushes after Gauldin asked Snowden to let him out of the car. (Id. at 446-48, 470.)

The court of appeal explained that Gauldin's lawyer had a tactical reason for not objecting to the codefendants' attire, and concluded that it was reasonable defense strategy. (Lodgment No. 11, People v. Gauldin, No. D052093, slip op. at 11-12.) The court noted that "minimizing the prejudicial look of Carter and Snowden would have been contrary to that defense." (Id. at 11.) Gauldin has not shown that the California Court of Appeal's decision that he could not demonstrate deficient performance by his trial counsel was an unreasonable application of federal law.

Gauldin's claim of ineffective assistance also fails because Petitioner has not demonstrated that he was prejudiced by his counsel's performance. <u>Strickland</u>, 466 U.S. at 687.  To establish prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694; <u>Beardslee v. Woodford</u>, 327 F.3d 799, 807-08 (9th Cir. 2003).  Here, Petitioner cannot establish any prejudice resulting from his counsel's failure to object to the codefendants' clothing.

Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," Petitioner has not shown that his trial counsel's performance was deficient. <u>Strickland</u>, 466 U.S. at 689.  Counsel chose to defend Gauldin on the theory that Snowden and Carter committed the crime with another individual, Jayski.  The Supreme Court acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." <u>Id.</u>

The California Court of Appeal properly concluded that Petitioner did not demonstrate that his trial counsel's representation was below an objective standard of reasonableness or that the jury's verdict would have been different if counsel had objected because "the evidence against him was strong and his story lacked credibility." (Lodgment No. 11, <u>People v. Gauldin</u>, No.

1  D052093, slip op. at 11-12.)  This decision was neither contrary

2  to, nor an unreasonable application of, clearly established Supreme

3  Court law.  <u>See</u> 28 U.S.C. § 2254(d)(1).  Nor was the decision based

4  upon an unreasonable determination of the facts.  <u>See</u> 28 U.S.C.

5  § 2254(d)(2).

6      For all these reasons, Gauldin's claim of ineffective

7  assistance of counsel at trial does not entitle him to relief and

8  should be DENIED.

9              **V. CONCLUSION AND RECOMMENDATION**

10     The Court submits this Report and Recommendation to United

11  States District Judge Larry Alan Burns under 28 U.S.C. § 636(b)(1)

12  and Local Civil Rule HC.2 of the United States District Court for

13  the Southern District of California.  For the reasons outlined

14  above, **IT IS HEREBY RECOMMENDED** that the district court issue an

15  Order (1) approving and adopting this Report and Recommendation and

16  (2) directing that Judgment be entered denying the Petition.

17     **IT IS ORDERED** that no later than March 28, 2014, any party to

18  this action may file written objections with the Court and serve a

19  copy on all parties. The document should be captioned "Objections

20  to Report and Recommendation."

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28

1    **IT IS FURTHER ORDERED** that any reply to the objections shall

2   be filed with the Court and served on all parties no later than

3   April 11, 2014.  The parties are advised that failure to file

4   objections within the specified time may waive the right to raise

5   those objections on appeal of the Court's order.  <u>See</u> <u>Turner v.</u>

6   <u>Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951

7   F.2d 1153, 1156 (9th Cir. 1991).

8        **IT IS SO ORDERED.**

9   DATED:  March 4, 2014        _____
                                     Ruben B. Brooks
10                                   United States Magistrate Judge

11  cc:   Judge Burns
           All parties

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28